UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 17-CR-20487-MGC

UNITED STATES OF AMERICA,

v.

JONATHAN CRUZ,
ERIC ORTIZ MELENDEZ,
JORGE APONTE FIGUEROA, and
DAVID GONZALEZ

        Defendants.
_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO
RETAIN LEARNED COUNSEL THROUGH TRIAL**

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response to Jonathan Cruz ("CRUZ"), Eric Ortiz Melendez ("ORTIZ"), Jorge Aponte Figueroa ("APONTE"),and David Gonzalez's ("D. GONZALEZ") Joint Motion to Retain Learned Counsel through Trial, filed on September 9, 2019 (DE: 336), and respectfully requests that this Honorable Court enter an order denying the motion.

**PROCEDURAL HISTORY**

    On October 20, 2017, a Southern District of Florida grand jury returned a second superseding indictment charging CRUZ, ORTIZ, APONTE, D. GONZALEZ and others with the following: conspiracy to commit Hobbs Act Robberies and several substantive Hobbs Act Robbery charges, all in violation of 18 U.S.C. Section1951(a), and several counts of brandishing a firearm in furtherance of a crime of violence and discharging a firearm in furtherance of a crime of violence, all in violation of 18 U.S.C. Sections 924(c)(21)(A)(ii) and (iii).  In addition, CRUZ and ORTIZ were charged with causing the death of a person in the course of a violation of 18 U.S.C. Section 924(c), in violation of 18 U.S.C. Section 924(j)(1) (DE: 60), which requires a potential death penalty sentence.

On November 16, 2017, this Court appointed "learned counsel" to represent ORTIZ[1] and CRUZ, given the death penalty eligible charge.[2] On May 17, 2018, a Southern District of Florida grand jury returned a third superseding indictment charging CRUZ, ORTIZ, APONTE, D. GONZALEZ and others with the same charges listed above. Additionally, in relevant part, APONTE and D. GONZALEZ were charged with carjacking, in violation of 18 U.S.C. Section 2119(3), and causing the death of a person in the course of a violation of 18 U.S.C. Section 924(c), in violation of 18 U.S.C. Section 924(j)(1), which requires a potential death penalty sentence (DE: 165). On June 8, 2018, this Court appointed "learned counsel" to represent APONTE[3] and D. GONZALEZ,[4] given the death penalty eligible charge (DE: 178-179).

On August 13, 2019,[5] the Government informed the Court and the Defendants that the Government will not seek the death penalty for any of the defendants. On August 26, 2019, during a status hearing before this Court, the Government requested the Court dismiss "learned counsel," given that the death penalty will no longer be sought in this matter and that "learned counsel" significantly increase the litigation costs (which taxpayers bear) (DE: 335). At that time, the Court requested the Defendants file a motion in support of the retention of "learned counsel," if they so choose to.

---

[1] Attorney Stuart Adelstein was appointed to represent CRUZ as "learned counsel." Attorney G.P. Della Fera was the initial attorney to represent CRUZ, and still serves as lead counsel, along "learned counsel" Adelstein.

[2] Attorney Rae Shearn was appointed to represent ORTIZ as "learned counsel." Attorney Joseph A. Chambrot was the initial attorney to represent ORTIZ, and still serves as lead counsel, along "learned counsel" Shearn.

[3] Attorney Jose Rafael Rodriguez was appointed to represent APONTE as "learned counsel." Attorney David J. Joffe was the initial attorney to represent APONTE, and still serves as lead counsel, along "learned counsel" Rodriguez.

[4] Attorney Bruce Fleisher was appointed to represent D. GONZALEZ as "learned counsel." Attorney Israel J. Encinosa was the initial attorney to represent D. GONZALEZ, and still serves as lead counsel, along "learned counsel" Encinosa.

[5] The Government notified this Court and all defense counsel via email and telephone of the Attorney General's decision not to seek the death penalty.

On September 9, 2019, a Joint Motion to Retain Learned Counsel through Trial (hereinafter, the "Motion") was filed (DE: 336).

## ARGUMENTS

CRUZ, ORTIZ, APONTE and D. GONZALEZ (hereinafter, the "Defendants") argue that this Court should grant the Motion because this case is extremely difficult and unusually complex, that the discovery is enormous, and that the waiver of the death penalty by the Government came at a late state of these proceedings. These arguments are unfounded, and do not appropriately set forth why "learned counsel," as opposed to the initial attorneys assigned to this case, are still needed on this matter.

As an initial matter, this Court should find that this case is no longer a capital case within the meaning of 18 U.S.C. § 3005. *See United States v. Douglas*, 525 F.3d 225, 237 (2d Cir. 2008). The Second Circuit further stated as follows:

> [W]e agree with the majority of the federal courts of appeals that once the government has formally informed the court and the defendant of its intention not to seek the death penalty, the matter is no longer a capital case within the meaning of § 3005 and that section does not require the district court to continue the appointment of a second attorney.

*Id.*; *United States v. Weddell*, 567 F.2d 767, 770 (8th Cir. 1977) (holding that the case lost its capital nature when the imposition of the death penalty was precluded). Whether a defendant is entitled to representation by a second attorney in death-eligible cases where the Government is not seeking the death penalty is left to the broad discretion of the trial court. *See Douglas*, 525 F.3d at 238.

The Guidelines for the Administration of the Criminal Justice Act ("CJA Guidelines") state that a court should make an appropriate reduction in the number of counsel absent extenuating circumstances. Guidelines for the Admin. Of Criminal Justice Act, Vol. VII, Part A, Ch. 6, § 630.30.

3

> In deciding whether there are extenuating circumstances, the court should consider the following factors: (1) the need to avoid the disruption of the proceedings; (2) whether the decision not to seek the death penalty occurred late in the litigation; (3) whether the case is unusually complex; and (4) any other factors that would interfere with the need to ensure effective representation of the defendant.

*Id*.

The first factor for the Court to consider is the need to avoid the disruption of the proceedings. Here, the Defendants have presented no basis to conclude that termination of "learned counsel" would disrupt the proceedings. The Defendants summarily argue that it would do so, without any detailed explanation or reasoning, and set forth that they have developed a significant attorney-client relationship with each Defendant (DE: 336 pg. 6). However, the Motion makes no mention of co-counsel for each defendant whatsoever, despite the fact that co-counsel were all appointed to this matter well before "learned counsel." Indeed, it is quite possible that co-counsel have also developed significant relations with their clients and could equally handle issues that arise at this juncture onward.

Further, the presence of "learned counsel" actually does more to disrupt the proceedings than not. For example, at the August 26, 2019 status hearing, it was "learned counsel" who stated that they had conflicts for the currently specially set trial date of February 3, 2020. Their reasons were that they are set for other death penalty cases during that time period. If the Court were to keep said counsel on this matter, it is likely that this case, which has been pending for over two years now, will repeatedly be continued to accommodate "learned counsels'" schedules. This is simply unproductive and harmful to this case, and unnecessary. Thus, this Court should find that there is no basis to conclude that terminating "learned counsel" would disrupt the proceedings (rather, the opposite may be true), especially when there has been no established basis that the other counsel on this case could not represent the Defendants effectively.

The second factor is whether the decision not to seek the death penalty occurred late in the litigation. Defendants argue that the "case has been pending for nearly two years, and that decision not to seek the death penalty came very late in litigation" (DE: 336 pg. 6). The Government rejects Defendants' assertion that the capital crime review was completed late in litigation. Importantly, this Court appointed "learned counsel" for ORTIZ and CRUZ in November 2017, and appointed the same for APONTE and D. GONZALEZ in June 2018. To date, none of the Defendants have filed any pre-trial motions. On August 13, 2019, immediately after receiving authorization not to seek the death penalty from the Attorney General's Office, the Government contacted the Court and each Defendant's counsel that the Government will not seek the death penalty against any of the Defendants. Learned counsel are well aware that the United States may not make such a representation prior to explicit approval from the Attorney General's Office, and understand that such approval takes several months. Further, in large part, the package submission to the Attorney General's Office was delayed due to defense counsel postponing the submission of their client's mitigation packets to the Government. Indeed, the Attorney General's Office requests that the defendant's mitigation packets be considered as part of their review – another fact that "learned counsel" is well aware of.

Further, there is ample time, even at this juncture in the case, for co-counsel to adequately prepare this case for trial. As stated above, the trial is specially set for February 3, 2020. That is six months from now. This extended time period gives the Defendants' co-counsels ample time to fully review and analyze the alleged "voluminous discovery," file pretrial motions, meet with their clients and further develop significant relationships with their clients in order to effectively represent them. The defense attorneys appointed are competent, capable practitioners who regularly appear in federal court. There is no indication that they cannot represent the Defendants well at

5

trial.

The third factor is whether the case is unusually complex.  Broadly and without basis, the Defendants argue that the case is "unusually complex" due to various legal and factual issues.  Defendants' fail to specify what makes a series of Hobbs Act robberies and carjacking that resulted in death of two victims "unusually complex."  Instead, Defendants cites to *United States v. Jones*, 2008 WL 2967028 (D.N.J. July 31, 2008), in support of retaining "learned counsel" due to the "unusual complexity "of the case.  However, *Jones* is distinguishable from our case.  *Jones* involved five Defendants charging them all with seven counts of murder conspiracy, murder, assault with a dangerous weapon, and use of carrying a firearm for a violent crime.  *U.S v. Jones*, 2008 WL 2967028, at 4 (D.N.J. July 31, 2008).  In relevant part, *Jones* noted that counsel "will require additional time to prepare an adequate defense including substantial pretrial motions regarding the questions of law and fact in this case. *Id*.  In addition, the *Jones* Court decision to retain "learned counsel" was predicated on the finding that extenuating circumstances exited: there is a need to avoid delay and disruption of the proceedings in this case, the decision not to seek the death penalty was late in the litigation stage and the case is unusually complex, which emanated from a homicide, racketeering activity, including robbery, attempted murder and narcotics distribution, which all contributed to the gravity and magnitude of the case.  *Id*.

This case is not unusually complex.  Rather, it is, unfortunately, quite similar to many cases that the United States frequently brings to trial – and is handled by competent, effective, and skilled defense attorneys who are not deemed "learned counsel."  For example, *United State v. Pineda Castro et.al.* (16-CR-20700-FAM), involved three defendants charged with conspiracy to commit, and committing, several Hobbs Act robberies, along with several counts of brandishing a firearm in furtherance of a crime of violence.

There are numerous other cases, where the Government has charged serial Hobbs Act robberies and brandishing/discharging of a firearm (some resulting in the shooting/harm of another), that serve as examples of instances where defense attorneys were not "learned counsel," but amply able to handle serious violent crime allegations. *See, e.g., United States v. Lionell Sanders*, 13-CR-20782-KMM; *United States v. Jean Lara,* 17-CR-20701-MGC; *United States v. Andrew Nelson*, 16-CR-20119-DMM; and *United States v. Dario Pinson*, 15-CR-20184-CMA.

A more complex case within our District is *United States v. Antonio Glass, et al.* (17-CR-20307-JEM), which was a two-month long federal jury trial involving ten defendants, all charged with violating RICO, and included testimony about multiple homicides, robberies, assaults, and drug trafficking. Even in that case, like the others listed above, "learned counsel" was not needed, as they are not here. Moreover, the factual allegations involved in this case would not require more time, skill, or effort than in an average case of this kind, as they are not technically difficult. Certainly, co-counsel are capable of effectively and competently trying this case. To reiterate, each co-counsel is accomplished and experienced criminal defense lawyer who has tried many serious cases, in state and federal court. In fact, one of the defense attorneys in the *Glass* case, supra, was Israel J. Encinosa, who also serves as D. GONZALEZ's attorney in this matter, despite not being "learned counsel." The Government recognizes the extremely serious nature of the case and of the alleged conduct that it involves, but this Court should not equate the seriousness of the case with the complexity of it. Based on the foregoing, the Court should deny the Defendants' Joint Motion to Retain Learned Counsel through Trial.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the undersigned respectfully requests that this Honorable Court enter an order denying the Defendants' Joint Motion to Retain Learned Counsel through Trial.

                Respectfully submitted,

                ARIANA FAJARDO ORSHAN
                UNITED STATES ATTORNEY

By:   /s/ Rilwan Adeduntan
       Assistant United States Attorney
       Court No. A5502193
       99 N. E. 4th Street
       Miami, Florida 33132-2111
       TEL (305) 961-9034
       Rilwan.Adeduntan@usdoj.gov

          /s/ Vanessa Johannes
          Assistant United States Attorney
          Court No. A5501644
          99 N. E. 4th Street
          Miami, Florida 33132-2111
          TEL (305) 961-9023
          vjohannes@usa.doj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I filed the foregoing document, Government's Response to the Defendants' Joint Motion to Retain Learned Counsel through Trial with the Court and counsels via CM/ECF.

          /s/ Rilwan Adeduntan
          Assistant United States Attorney